**MID-TEXAS PETROLEUM CO. et al. v. COLCORD et al.  (No. 9803.)**

(Court of Civil Appeals of Texas. Fort Worth. July 2, 1921. Rehearing Denied Oct. 15, 1921.)

1. **Evidence ⊚⟿460(7)—Oil and gas lease and subsequent conveyances held sufficient to admit extraneous evidence of identity of land.**

An oil and gas lease and subsequent conveyances, including a deed of partition between parties then holding the lease in common, though indefinite and uncertain in their descriptive calls, *held* to contain references authorizing the consideration of extraneous proof of identity of the land.

2. **Partition ⊚⟿8—Partition deed between owners of lease held capable of being rendered certain by plat and other evidence.**

A partition deed between parties holding oil and gas leases in common, which described the leased land as 102 acres out of the north part of the B. survey, abstract 12, and 150 acres out of the south part of 250 acres of the T. survey, abstract 278, described in the original oil and gas lease between parties named, dated March 21, 1917, and recorded in a specified volume and page, as shown in a plat therein referred to, and which described the land allotted to the parties as 51 acres out of the B. tract and marked No. 1, etc., *held* capable of being rendered reasonably certain by the plat referred to, together with other calls and evidence.

3. **Estoppel ⊚⟿22(2)—Parties to partition deed estopped to deny title of another party, though no conveyance to him appeared.**

Where a partition deed, reciting that the parties held oil and gas leases to the property partitioned in common, was executed by one of the original lessees, and by the other original lessee as president of an oil and gas company, they were estopped to dispute the title of third party to deed, though no conveyance to him was shown.

4. **Injunction ⊚⟿35(2)—Suit held possessory, and plaintiffs entitled to recover on proof of their possession under oil and gas lease.**

A suit by the holders of an oil and gas lease, to restrain defendants from appropriatng to their own use parts of the surface of the leased land, was possessory in character, and plaintiffs were not required to recover alone on the strength of their written muniments of title, but, in the absence of adequate controverting proof, could recover on proof of their actual possession under the lease, and the drilling of one or more producing wells with the purpose of further full development, especially where one of the defendants was an assignee or sublessee of part of the leased land, and estopped to dispute plaintiffs' title.

5. **Injunction ⊚⟿7—May be granted under statute regardless of existence of legal remedy.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4643, authorizing writs of injunction where the party applying therefor is entitled to the relief demanded, and such relief or any part thereof requires the restraint of some act prejudicial to the applicant, the injured party is entitled to an injunction regardless of whether he has a legal remedy which, under the rules applied by courts of equity, would require a denial of the writ.

6. **Mines and minerals ⊚⟿78(1)—Lease held to grant right to use such part of surface as is reasonably necessary.**

An oil and gas lease, granting the right to prospect for and secure the oil and gas under

---

the leased lands, carries with it the right to use such part of the surface as is reasonably necessary to secure, develop, and care for the oil and gas produced.

**7. Mines and minerals ☞81—Lessor not authorized to grant right to third persons to use shore in drilling in bed of adjoining river.**

The owners of an oil and gas lease covering the lands adjoining a river had a right to use every foot of the surface along the shore line of the river that was reasonably necessary to the full development of the various sands shown to exist, and necessary for the care and production of all such oil and gas as might be found, and the lessors had no right to grant to others the use of the shore in drilling in the bed of the river wells which would draw oil and gas from under the leased premises.

**8. Mines and minerals ☞81—Assignee or sublessee of part of premises not authorized to grant use of surface to persons drilling in bed of adjoining river.**

Where an assignee or sublessee of part of the premises covered by an oil and gas lease and adjoining a river, covenanted that its development of the land should be full so as to render available the greatest amount of oil and gas reasonably obtainable, and that it would drill all such offset wells as were necessary to protect the land from drainage, it could not grant to others the right to use the shore of the river in drilling, in the bed of the river, wells which would draw oil and gas from the leased premises.

Appeal from District Court, Young County; H. F. Weldon, Judge.

Suit by the Mid-Texas Petroleum Company and another against C. F. Colcord and others. From a judgment for plaintiffs for insufficient relief, all parties · appeal. Reversed and rendered in part, and affirmed in part.

John W. Woods, of Abilene, and Schenck & Triplett, of Graham, for plaintiffs.

Bailey, Nickels & Bailey, of Dallas, and Marshall & King, of Graham, for defendants.

CONNER, C. J. The appellants, the Mid-Texas Petroleum Company and the Graham Oil Syndicate, instituted this suit in the district court of Young county on the 21st day of April, 1921, to enjoin C. F. Colcord, J. N. Graves, O. B. Colquit, M. K. Graham, E. W. Harrison, the Seaboard Oil & Gas Company, and F. H. Corbin from appropriating to their own use certain portions of the surface of 40 acres of land bordering on the Clear fork of the Brazos river, in Young county, of which it was alleged the plaintiffs were entitled to possession as the owners of a mineral lease. The south line of the 40 acres extends from its southwest corner east some 3,836 feet to a point on the bank of the river, from which point the Brazos river makes a short bend to the north, then a short bend to the south, then a large bend to the west. The west line of the 40 acres extends north and south some 970 feet, thence east 1,167 feet until it reaches the river. The remaining line follows the meanders of the stream. The 40 acres have been divided into two tracts of 20 acres each, designated in the evidence as the north and south 20 acres. The west boundary line of the south 20 acres is approximately 316 feet. The west line of the north 20 acres is approximately 655 feet. The north line of the south 20 acres, extending from the west line of the 40 acres to a point on the river, is 1,593 feet. The north line of the north 20 acres has already been stated, to wit, 1,167 feet, as also the south line of the south 20 acres, to wit, 3,836 feet. A study of these outlines will show that the eastern section of the south 20 acres consists of a long, narrow strip of land existing between the bank of the river and the south line. The evidence is to the effect that the distance between the south line and the river at its narrowest point is 30 feet, and at its widest point 275 feet. The north 20 acres is claimed by the plaintiff, the Mid-Texas Petroleum Company, under assignments or subleases to be hereinafter referred to. The south 20 acres is claimed by the defendant, the Seaboard Oil & Gas Company, under an assignment or sublease from the Mid-Texas Petroleum Company.

The defendant C. F. Colcord and others are claiming a mineral lease from the state of Texas to the bed of the river, and under an assignment or lease of the surface from M. K. Graham, the original lessor, and from the Seaboard Oil & Gas Company, to locate upon the surface of the north and south 20 acres drilling rigs, pipe lines, storage tanks, etc., in order to drill wells for the production of gas and oil in the bed of the river throughout its border to the 40 acres in controversy, and this suit was instituted by the plaintiffs in order to enjoin the defendants from making such use of the surface of the 40 acres.

Upon the presentation of the plaintiffs' petition, which was duly verified, the court, on April 21, 1921, ordered notice to be issued to the defendants, as required by law, commanding them to appear before the court on April 29th and show cause, if any they had, why the writ of injunction as prayed for should not be issued. The defendants appeared and answered by general demurrers, a general denial, and specially that they would not, in the exercise of their rights, do or permit to be done anything which would interfere with or prevent the complete performance by the Seaboard Oil & Gas Company of any duty or obligation it owed to the plaintiffs.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On the 29th day of April, 1921, the court heard the cause, and, after considering the pleadings and evidence and argument of counsel, entered judgment granting the plaintiffs' prayer for an injunction, so far as it related to the north 20 acres, but denied the injunction so far as it related to the south 20 acres, and all parties have prosecuted this appeal.

The principal contention of the appellees, Colcord and others, is that appellants have shown no such title as authorized them to maintain this suit or to receive the relief that was granted to them. This contention necessitates a review of the plaintiffs' title. It was agreed by all parties that M. K. Graham was the owner of the land in controversy, and is the common source of title for the purpose of the hearing "subject to the rights of the plaintiffs and defendants as disclosed by the evidence." The evidence discloses that on the 8th day of February, 1917, M. K. Graham, joined by his wife, executed and delivered to O. B. Colquit, designated as "lessee," a mineral lease in a familiar form to 347 acres of land out of the James Bolton survey, and the south 250 acres of land of the Sarah Tankersley survey, "including all from top of first river bank and containing 597 acres, more or less." The lease granted the usual privileges of entry, "laying of pipe lines and building tanks, powers, stations, and structures thereon to produce, save, and take care of" the production. To the grantors was reserved a royalty of ⅛ of the oil, provided for the payment of $300 per year from each producing gas well, and by its terms contemplated that the lessee might assign all or any portion of the lease.

On the 21st day of March, 1917, O. B. Colquit executed an instrument to O. B. Colquit and J. N. Graves purporting to convey of the lands so leased to Colquit, by Graham and wife, 102 acres of the James Bolton survey and 150 acres "out of the south 250 acres of the Sarah Tankersley survey," giving an abstract and patent numbers, and "including all from the first or top river bank, all situated in the county of Young, state of Texas."

The next instrument purports to be in the nature of a deed of partition between the Brazos Oil & Gas Company, Leon Huckins, and J. N. Graves. It recites that the parties named "hold in common" oil and gas leases upon the lands described in the deed from Graham and wife to O. B. Colquit, further reciting that said lands were "all the lands owned by M. K. Graham in said surveys, leased by M. K. Graham and wife Maude Graham to O. B. Colquit, dated the 8th day of February, 1917." The instrument further recites that the particular portion of the land last above described to be partitioned between the parties consists of "102 acres out of the north part of the James Bolton survey, abstract 12, for 150 acres out of the south part of the 250 acres out of the Sarah Tankersley survey, abstract 278, both of which are described in the foregoing lease from Graham and wife to O. B. Colquit and J. N. Graves, dated March 21, 1917, and recorded in volume 64, p. 128, Deed Records of Young County, Texas, as shown in the following plat." The plat here referred to is not included in the copy of the instrument presented in the statement of facts, but by succeeding references it is to be inferred that the plat was divided into one, two, three, and four sections; and to the Brazos Oil & Gas Company was apportioned 51 acres out of the northern part of the James Bolton tract, "above described and marked No. 1," and 35 acres "near the center of the 150-acre tract marked No. 3 on the above plat;" that Leon Huckins should have as his part "35 acres of the Sarah Tankersley tract immediately south of the 80 acres granted to Huckins to [by] the Brazos Oil & Gas Company, 35 acres out of the Tankersley tract south of the partition to [by] Brazos Oil & Gas Company to J. N. Graves, one-half of the 102 acres of the James Bolton tract to be divided equally between the Brazos Oil & Gas Company and J. N. Graves."

J. N. Graves was to have "the south 51 acres out of the James Bolton survey, and marked No. 2, and shall likewise have 35 acres out of the south part of the 150 out of the 250 acres Sarah Tankersley tract, as shown by plat above and marked No. 4." This instrument was executed by the Brazos Oil & Gas Company, "by O. B. Colquit, president, J. T. Bowman, secretary," and by Leon Huckins and J. N. Graves.

The next instrument is one from Leon Huckins and wife to D. E. Stimson. The instrument refers to the lease from Graham and wife to O. B. Colquit, and describes the south 20 acres of the Sarah Tankersley survey by metes and bounds and conveys to Stimson the grantor's interest to the north 80 acres of "the above described tract of 250 acres."

The next instrument is from D. E. Stimson to the Graham Oil Syndicate. It refers to the lease from Graham and wife to O. B. Colquit, describes the south 250 acres of the Sarah Tankersley survey by metes and bounds, and recites that Stimson is "the present owner of said lease and all rights hereunder are incident thereto," and bargains, sells, and transfers "all rights, title, and interest of the original lessee and present owner in and to said lease and rights thereunder so far as it covers the north 40 acres of the 80 acres of the said south 250 acres out of said Tankersley survey." The instrument contains the grantor's covenant

that he was the owner and had the right to sell.

The next conveyance is from the Graham Oil Syndicate to the Mid-Texas Petroleum Company. It conveys to the latter company the personal property therein referred to and "the north 40 acres of the south 250 acres of the Sarah Tankersley survey, in Young county, Tex., being the same 40 acres described in assignments of oil and gas lease transferred to said Graham Oil Syndicate by D. E. Stimson on the 12th day of March, 1921." It provides that the Petroleum Company should pay to the grantor five six-teenths of all oil and gas thereafter produced from the premises, at its own expense finish well then located on said leasehold premises to the "McClusky sand," and drill three additional wells, "together with such offset wells as may be necessary in order to fully comply with the terms of the original lease described in the assignment from D. E. Stimson to the Graham Oil Syndicate above referred to." The instrument covered other provisions not thought to be material to our disposition of the question.

The next instrument is one executed by the appellant, the Mid-Texas Petroleum Company to the appellee, the Seaboard Oil & Gas Company. It refers to the assignment from the Graham Oil Syndicate and the page of its record, and to the lease executed by Graham and wife and its record, and, for a consideration of $7,250, to be paid out of the proceeds of the oil produced by the Seaboard Oil & Gas Company, and the further consideration of one-eighth of all the oil and gas produced by that company, conveys or assigns, upon the terms stated, the south one-half of the 40 acres of the south 250 acres of the Sarah Tankersley survey, assigned by the Graham Oil Syndicate to the Mid-Texas Petroleum Company. The instrument provides that the Seaboard Oil & Gas Company should, within the time stated, drill three wells upon the 20 acres assigned and "drill all necessary offset wells to properly protect the property from drainage." It was further provided that the assignee should use modern means and equipment in drilling and in completing the wells so as to make all paying oil sands encountered produce the maximum production of oil, and that, "in the event of the drilling of any offset well to any deeper pay than the McClusky sand, the second party shall likewise protect this lease against such offset well."

The foregoing instruments are all of the written muniments of title in plaintiffs disclosed by the statement of facts. The remaining instruments relate to the title of defendants, which will be noted later.

[1-3] While the descriptive calls, as above given, in at least some of the written muniments of appellants' title, if unaided, are doubtless so indefinite and uncertain as to render the instruments containing them inoperative as conveyances of any land, yet one or more of them, if not all of them, contain references which authorize the consideration of extraneous proof of identity. See cases cited in 6 Texas Digest of Decisions, p. 179 et seq. This is particularly true of the partition deed between the Brazos Oil & Gas Company, J. N. Graves, and Leon Huckins, through whom appellants claim. As part of the descriptive call in that instrument reference is made to a subdivision plat made part of the instrument, and which was before the trial court, but which the parties have omitted from the record before us. Such plat, together with other calls and evidence, may have rendered reasonably certain the particular part of the Sarah Tankersley survey awarded to Leon Huckins. The judgment below in favor of appellants as to the north 20 acres would seem necessarily to import a conclusion on the part of the trial court that the appellants' title sufficiently supported their plea. But it is suggested that no previous conveyance to Huckins is shown. This is true, but the instrument recites that the parties thereto own the land "in common," and it is executed by J. N. Graves, one of the original lessees, from Graham, and by the other original lessee, O. B. Colquit, as president of the Brazos Oil & Gas Company. They thereby acknowledge Huckins' title, and are now estopped in this action to dispute it.

[4] It is to be further noted in this connection that this action is not one in trespass to try title where appellants are dependent alone upon the strength of their written muniments of title, but, on the contrary, is one possessory in its character, appellants seeking and appellees resisting possession of so much of the surface as is necessary to the full enjoyment of a mineral lease of the lands to which appellants, without dispute, are and have been in actual possession, claiming under instruments each of which have been duly recorded, emanating from the common source. Not only is it shown that the appellant, the Mid-Texas Petroleum Company took and held actual possession of the 40 acres of the Sarah Tankersley survey under the assignment to it from the Graham Oil Syndicate, but also that it has drilled one or more producing wells on the north 20 acres in controversy, with the purpose of its further full development. Such acts of possession alone are prima facie evidence of title sufficient to support appellants' action in the absence of adequate controverting proof, and this has not been furnished us. The suggestion here made applies with unusual force to the appellee Seaboard Oil & Gas Company, for it is undisputed in the evidence that it took and holds actual possession of the south 20

acres in controversy by virtue of the lease to it from the appellant Mid-Texas Petroleum Company, and, in accord with the terms of its lease, has drilled several producing wells and is substantially in the position of a tenant, which, under well-settled rules of law, cannot dispute its landlord's title. In this connection we further observe that, in one of the written muniments or contract under which appellees claim, and executed by M. K. Graham and E. W. Harrison, it is recited that the "Seaboard Oil & Gas Company is the owner of a certain oil and gas lease executed by M. K. Graham to O. B. Colquit on February 8, 1917, * * * in so far as the said lease covers the south 250 acres of the Sarah Tankersley survey * * * according to plat of said 250 acres made March 24, 1920, and recorded in said deed records." We therefore conclude, on this branch of the subject, that appellants cannot be denied the relief given them as to the north 20 acres, or refused the relief they sought as to the south 20 acres, on the mere ground that they are without sufficient title.

We must determine, however, the further question, presented by assignments of error, propositions, etc., of whether, admitting the sufficiency of appellants' title, the evidence is such as requires the relief sought by appellants. The right of appellee Colcord and others to use the shore surface of the land in controversy for the purpose of drilling and producing oil wells in the bed of the Brazos river immediately adjacent, is based upon written instruments so authorizing and executed by M. K. Graham and the Seaboard Oil & Gas Company. Thereunder, if permitted, appellees would have the privilege of using the shore surface of the appellants' lease for drilling rigs, steam and water pipes, and storage tanks necessary to the production of oil in the river bed. In addition to the written evidences already referred to, we have before us only the oral testimony of five witnesses. Mark Logan, E. G. Allen; and W. R. Timmons testified in behalf of appellants. M. K. Graham and C. F. Colcord testified in behalf of the appellees. The oral testimony will not be fully quoted, but it has been carefully considered, and we think it must be said that the testimony of the witnesses in behalf of appellants shows without dispute that there are three oil-producing sands under the territory in controversy; that oil wells drilled in the river from its shore will necessarily be within a very short distance of the short line; and that, because of the migatory character of oil and gas, a well so drilled will in all probability draw as great a quantity of oil from the oil sands under appellants' lease as from those under the bed of the river. It will be remembered that the lease contract of the Seaboard Oil & Gas Company from the Mid-Texas Petroleum Company specifically provides, among other things, that all such offset wells as are necessary to protect the territory shall be drilled, and the testimony of appellants' witnesses further show that it will be necessary in order to fully develop and utilize the three oil sands mentioned, and for the drilling of necessary protecting offset wells, to use the whole of the shore surface, and that the use of such shore surface as threatened by appellees will prevent the drilling of necessary offset wells, and that storage tanks, etc., necessary to the production and preservation of oil from the bed of the river will greatly increase the fire hazard. We here quote a part of the testimony of witness Logan. He testified:

"In order to cover this territory (that in controversy) with wells and operations on the east end of both tracts (the north and south 20 acres) and undertake to get the maximum production from the sands under the contracts under which we hold, we would need every foot of the surface for drilling operations. There is a great deal to be done besides locating derricks, oil tanks, water tanks, slush pits, etc. We are compelled to take care of the oil and it is necessary to lay a great many oil pipe lines. It is also necessary to lay gas lines, water lines, steam lines, etc., and the east end of these tracts are right now a perfect network of lines of all kinds, and we will have to have a great deal more such lines; and, in fact, we will not have as much room on the surface as we should have for economic development and to protect our properties against fires."

The other witnesses in behalf of appellants substantially corroborated Logan, and the testimony of the witnesses in behalf of appellees is entirely silent on these subjects, their testimony relating to wholly different subjects immaterial to the one now discussed.

[5] Such a state of the evidence, in our judgment, not only supports the court's order in favor of appellants, but also requires the like relief to be extended to them as to the south 20 acres in possession of the Seaboard Oil & Gas Company; our statutes on the subject (V. S. Tex. Civ. Stats. art. 4643) authorizing the granting of writs of injunction, among other instances, "where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief or any part thereof requires the restraint of some act prejudicial to the applicant." As construed in Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994, and in other cases following it, this statute, when shown to apply, enlarges the right on an injured party to an injunction and renders it available and effective, regardless of whether the complaining party may have a legal remedy, which, under rules applied by courts of equity, would require a denial of the writ. We need not therefore discuss at

length the contention that appellants would be entitled to the legal remedy·of a suit for damages in event the appellee, the Seaboard Oil & Gas Company, and the other defendants should perform the threatened acts, although, as it seems to us, the evidence shows that, even under rules administered by courts of equity, a suit for damages would be inadequate. Indeed, it has been so held frequently in cases such as we have before us. See Morrison-De Soto Oil & Gas Rights, p. 105; Lindlay v. Raydure (D. C.) 239 Fed. 928; Guffey v. Smith, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856; Westmoreland & Cambria Natural Gas Co. v. De Witt, 130 Pa. 235, 18 Atl. 724, 5 L. R. A. 731.

[6-8] Graham and wife, the owners of the fee in the original lease to O. B. Colquit, only granted the right to prospect for and secure the oil and gas under the lands made the subject of lease. While the grant did not in terms include the surface, it nevertheless carried with it, and attached to all the subsequent assignments thereof, the further right to such part of the surface as was reasonably necessary to secure, develop, and care for the oil and gas produced. Such a right and privilege was necessary to the grant, and without which the grant would be of no value. This is true whether the grant specifically provides for such privileges or not. The rule on the subject is thus stated in 8 R. C. L. § 123, under the title of "Deeds":

"Generally everything is deemed to pass which is necessary to the proper use of the property conveyed."

The author cites in a footnote a great number of cases in support of the text, and we feel sure that this construction will be accepted without further discussion. Appellants therefore, we think, under the various rights and assignments mentioned, secured the right to the use of every foot of the surface along the shore line of the Brazoz river that is reasonably necessary to the full development of the various sands shown to exist, and necessary for the care and production of all such oil and gas as may be found through the processes of their development. It was expressly covenanted by the Seaboard Oil & Gas Company that the development of the south 20 acres should be full so as to render available the greatest amount of oil and gas reasonably obtainable from the three sands, and such would be its obligation even in the absence of a specific covenant to that effect. See, Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464, and many authorities to the same effect that might be cited. Not only did the obligation of full development rest upon the Seaboard Oil & Gas Company, but the further obligation rested upon it, not only by implication, but also by the specific terms of its lease, to drill all such offset wells as was necessary to protect from drainage the lands it acquired from the appellant, the Mid-Texas Petroleum Company. See 1 Thornton on Law of Oil and Gas, § 122; Grubb v. McAfee, supra. It would be manifestly impracticable to fulfill these obligations and at the same time fulfill its contract with Colcord and others to drill wells as threatened in the bed of the Brazos river immediately adjoining; and the right to so do, we think, did and does not exist in either M. K. Graham, the original lessor, nor in any subsequent assignee of the lease. See 1 Thornton on Law of Oil & Gas, § 107; Lynch v. Burford, 201 Pa. 52, 50 Atl. 228; Westmoreland & Cambria Natural Gas Co. v. De Witt, by the Pennsylvania Supreme Court, 130 Pa. 235, 18 Atl. 724, 5 L. R. A. 731.

For the reasons stated, we conclude that the· judgment in favor of the appellees as to the south 20 acres of the Sarah Tankersley survey, covered by the lease of the Seaboard Oil & Gas Company, should be reversed and here rendered in favor of the appellants, in accord with the prayer of their petition, and that the judgment in favor of appellants as to the north 20 acres of said survey embodied in the lease from the Graham Oil Syndicate to the appellant Mid-Texas Petroleum Company be affirmed; it appearing that the two parcels are subject to substantially the same conditions. It is further ordered that such judgment for appellants be certified to the court below for observance, and such further proceedings, if any, as may be necessary and not inconsistent with this opinion.