Opinion filed June 27, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00236-CV
_____

## KADANE CORPORATION, Appellant

## V.

## CHOLLA PETROLEUM, INC., Appellee

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. C42625**

### M E M O R A N D U M   O P I N I O N

Kadane Corporation sued Cholla Petroleum, Inc. for trespass and unreasonable interference. The lawsuit was based upon Kadane's belief that Cholla's use of an upstream pipeline to transport gas from its high-pressure wells on its Texas mineral lease in the Possum Kingdom Lake area unlawfully prevented Kadane from using that same upstream pipeline "as a compressor inlet line" to transport gas extracted from Kadane's three Brazos River Authority (BRA) low-pressure wells to Kadane's compressor for compression and transport through a

downstream pipeline. The trial court granted a final summary judgment that Cholla had not trespassed or unreasonably interfered with Kadane's operations. We affirm.

*I. Background Facts*

Kadane Corporation operates gas wells on a peninsula in Possum Kingdom Lake as part of a Brazos River Authority oil and gas lease that the BRA executed in favor of Kadane Oil Company in 1976. Kadane Corporation is the successor in interest to Kadane Oil Company. We will refer to both entities as Kadane. Kadane agreed to sell the gas production under the lease to Texas Utilities Fuel Company (TUFCO). In 1983, Kadane entered into a line use agreement with Southwestern Gas Pipeline, Inc. whereby the parties agreed that the TUFCO gas was to be marketed and delivered through a pipeline owned by Southwestern. Enbridge G&P (North Texas) L.P. is the successor in interest to Southwestern Gas Pipeline, Inc.

In the line use agreement between Kadane and Southwestern, the parties agreed that Kadane was to add 1,500 feet to the existing 12,000 foot pipeline and maintain "the approximately 13,638 feet of pipeline and use the same free of charge as a compressor inlet line only until you receive written notice from Southwestern that we intend to use this line for another service or you give written notice that you no longer need this line for gathering gas to your owned or leased compressor from wells now producing or capable of producing and additional wells which you or others may complete and have connected under the terms of Gas Purchase Agreements, as amended from time to time." The parties to the agreement also provided that either party could terminate the agreement on thirty days' written notice.

Kadane drilled multiple wells on the BRA lease prior to 1985 and has since plugged BRA Wells Nos. 1 and 4. Kadane's BRA Wells Nos. 3, 5, and 8 tied into

2

the upstream pipeline to transport gas to the Kadane compressor, which, after compression, transported the gas to TUFCO through the downstream pipeline. Kadane's BRA Wells Nos. 2 and 6 tied directly into the downstream pipeline. More than twenty years later, Kadane drilled BRA Well No. 10, which is a prolific producer, and Kadane also tied it into the downstream pipeline.

In 2005, Cholla obtained a mineral lease from the State of Texas. The lease covered a portion of a riverbed channel lying under Possum Kingdom Lake. Because of surface use restrictions and disagreements, Cholla filed a condemnation suit to secure surface rights from Kadane and BRA, but later nonsuited after entering into a Surface Use Agreement (SUA) with BRA. BRA granted Cholla "the right to use the surface estate of [BRA] lands," subject to certain terms and conditions. One such condition was a "Reservation in Favor of [BRA]" that Cholla must "not unreasonably interfere with the existing use of such land by [BRA]'s surface and mineral lessees."

Cholla executed a gas purchase contract in 2005 with Enbridge that amended the gas purchase contract between Cholla and Enbridge's predecessors. Later, Cholla drilled State Mockingbird Wells Nos. 3 and 6 and BRA Well No. 9, all of which are prolific, high-pressure wells, and Cholla sought to transport that gas through Enbridge's pipeline. Enbridge wanted to transport Cholla's gas production upstream and convert its upstream pipeline to a high-pressure line. In 2007, Enbridge sent written notice to Kadane that it was terminating all line use agreements, including the 1983 agreement, and that Kadane was to disconnect its nominal, low-pressure wells.

When Kadane failed to disconnect its low-pressure wells from Enbridge's upstream pipeline, Enbridge sent additional letters and made telephone calls to Kadane about disconnecting its wells. After no response, Enbridge disconnected Kadane's wells, laid a new line, and converted its upstream pipeline to a high-

3

pressure line.  Later, Kadane shut in BRA Wells Nos. 3, 5, and 8, but BRA Wells Nos. 2 and 6 continued to produce.  Kadane did not sue Enbridge and conceded that Enbridge had the right to terminate the line use agreement.

Kadane instead sued Cholla and moved for partial summary judgment on its trespass and interference claims.  To prevail on its trespass claims, Kadane must prove wrongful interference with its right of possession of real property.  *Cargal v. Cargal*, 750 S.W.2d 382, 385 (Tex. App.—Fort Worth 1988, no writ).  To succeed on its breach of contract claim as an alleged intended beneficiary of the SUA, Kadane must prove that Cholla "unreasonably interfered" with Kadane's "existing use" of the surface estate.  Cholla also moved for a final summary judgment and, in its motion, asserted that it had not trespassed or interfered.  The trial court concluded that termination of the line use agreement was within Enbridge's legal right and not caused by any unlawful act by Cholla, that neither Enbridge nor Cholla trespassed, and that Cholla did not unlawfully or unreasonably interfere with any existing use of the surface by Kadane.

## *II. Issues Presented*

Kadane claims that Cholla is liable for trespass because it assented to, adopted, and ratified Enbridge's unlawful disconnection of Kadane's wells and compressor, which were done for Cholla's benefit and interest.  Kadane argues in its second issue that, "[b]y tying its wells into Upstream Enbridge Pipeline rather than downstream of the Kadane Compressor thereby knocking the Kadane Upstream Wells off production, Cholla unreasonably interfered with Kadane's lawful use of the surface as a matter of law."

## *III. Standard of Review*

We review a trial court's ruling on a traditional motion for summary judgment de novo.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  We must determine whether the movant established that no genuine issue

4

of material fact existed and that the movant was entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *Apcar Inv. Partners VI, Ltd. v. Gaus*, 161 S.W.3d 137, 139 (Tex. App.—Eastland 2005, no pet.). To be entitled to summary judgment, a defendant must either disprove an element of each of the plaintiff's causes of action or establish an affirmative defense as a matter of law. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

We consider the summary judgment evidence in the light most favorable to the non-movant and indulge all reasonable inferences and resolve all doubts in favor of the non-movant. *Am. Tobacco*, 951 S.W.2d at 425; *Nixon*, 690 S.W.2d at 548–49. When the trial court's order specifies the grounds it relied upon for its ruling, as is the case here, we will only consider the propriety of the grounds specified. S*tate Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380–81 (Tex. 1993). If granting judgment on the specified grounds was improper, "we must remand the cause to allow the trial court to rule on the remaining grounds." *State v. Flag-Redfern Oil Co.*, 852 S.W.2d 480, 484 n.6 (Tex. 1993).

*IV. Scope of Summary Judgment Review*

Cholla argues that our review is limited to the evidence offered in support of or in opposition to Cholla's motion for summary judgment. Cholla agrees that reviewing courts may consider all of the summary judgment evidence when reviewing cross-motions but argues that is not the case here since Kadane's motion sought only partial summary judgment. Cholla's argument inadvertently merges three distinct summary judgment principles of review: reviewability, relief upon reversal, and evidence to be considered on appeal.

First, reviewability of a ruling on a motion for summary judgment depends on finality. An order denying summary judgment is not final and appealable; such a denial means that there is a fact issue or that the elements have not been proven

5

as a matter of law. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). But an order that denies summary judgment to one party and grants summary judgment to another party produces a final judgment; the denial is reviewable as part of the appeal from the granted motion. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). "Absent an exception or statutory mandate, the parties must have both sought a final judgment for this rule to apply." *Apcar*, 161 S.W.3d at 139 (denying review of the denial of a partial summary judgment motion while reviewing if trial court properly granted final summary judgment in favor of the opposing party).

Second, the relief we grant upon reversal depends on whether a final judgment or partial judgment was requested. Reviewing courts can reverse a summary judgment in favor of one party and render judgment for the other only when both parties moved for a final summary judgment in their cross-motions. *See Bowman v. Lumberton Indep. Sch. Dist.*, 801 S.W.2d 883, 889 (Tex. 1990); *Runyan v. Mullins*, 864 S.W.2d 785, 788 (Tex. App.—Fort Worth 1993, writ denied). If both parties did not seek final judgment, and we reverse a trial court's summary judgment, then we must remand for a trial and determination of a fact issue or for the party to prove its case. *Jones*, 745 S.W.2d at 900.

Finally, the evidence we can consider on appeal is not limited by the type of relief sought, as Cholla contends. Instead, we consider the evidence that was "properly before the court at the time judgment was rendered." *DeBord v. Muller*, 446 S.W.2d 299, 301 (Tex. 1969). At the time of judgment, cross-motions and accompanying summary judgment evidence that have been properly and timely filed under Rule 166a(c) are "properly before the court" and may be considered by the trial court when ruling on the motions. *Id.* Further, the evidence is not limited to what was offered in reply to a motion for summary judgment. *Futch v. Greer*, 353 S.W.2d 896, 898 (Tex. Civ. App.—Amarillo 1962, writ ref'd n.r.e.). "In our

6

opinion appellees' own motion for summary judgment supported by affidavits and exhibits attached thereto, together with the deposition of appellee . . . , constituted sufficient opposition to appellants' motion." *Id.* at 898–99.

Kadane moved for partial summary judgment on its claims; Cholla moved for a final summary judgment on traditional and no-evidence grounds. In its summary judgment response, Kadane incorporated by reference the evidence it had already offered in its motion for partial summary judgment. Both parties filed objections and responses, and the trial court heard the motions and noted that it had considered them and the parties' responses. Therefore, the arties' motions and their attached evidence were properly before the trial court. Because Kadane only moved for a partial judgment, while Cholla moved for final judgment, we review whether the trial court erred in granting summary judgment in favor of Cholla. *See Apcar*, 161 S.W.3d at 139.

*V. Discussion and Analysis*

*A. Issue One: Trespass*

Kadane contends that the interference or physical trespass occurred when Enbridge disconnected Kadane's upstream wells from the upstream pipeline and that, because Cholla "assented, adopted and ratified the acts and entry by Enbridge done for Cholla's benefit and interest," Cholla is equally liable for the trespass. *See Schievink v. Wendylou Ranch, Inc.*, 227 S.W.3d 862, 864 (Tex. App.—Eastland 2007, pet. denied). "If, by any act of his, the actor intentionally causes a third person to enter land, he is as fully liable as though he himself enters. Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person's entry, if it be a trespass." RESTATEMENT (SECOND) OF TORTS § 158 cmt. j (1965); *see also City of Mineral Wells v. McDonald*, 170 S.W.2d 466, 469 (Tex. 1943).

The summary judgment evidence established that, when Enbridge decided to convert its upstream pipeline to a high-pressure line, it sent written notice to Kadane on September 5, 2007, terminating all line use agreements between the parties, including the 1983 line use agreement. When Kadane failed to disconnect its wells, Enbridge again sent written notice on February 18, 2008. In the second letter, Enbridge advised Kadane to "make immediate efforts to disconnect your wells from these line agreements so that you will no longer be trespassing upon property belonging to Enbridge." When Kadane again failed to disconnect its wells, Enbridge called and advised Kadane that it would disconnect the wells the following day. The following day, Enbridge disconnected Kadane's wells and compressor. Enbridge then laid a new line and converted the upstream pipeline to a high-pressure line.

The line use agreement gave both Kadane and Enbridge the right to terminate the agreement upon written notice, and Enbridge gave written notice on two occasions that it was terminating the line use agreement. Kadane did not sue Enbridge but, instead, conceded that Enbridge had the right to terminate the agreement. Enbridge did not commit a trespass when it disconnected Kadane's wells and compressor because Kadane had failed to timely disconnect them after Enbridge terminated the line use agreement. Cholla was never involved in this agreement or action and cannot be held liable for Enbridge's actions. In addition, Cholla was not involved with Enbridge's actions and, as a mineral lessee with a surface use agreement, had a legal right to drill its wells and to tie into the Enbridge pipeline when and where it did so. Therefore, neither Enbridge nor Cholla trespassed, and Kadane's first issue is overruled.

*B. Issue 2: Unreasonable Interference*

Kadane claims that it "used the surface of the [land] for the entire length of the Upstream Enbridge Pipeline to gather and market the gas produced from the

8

Kadane Upstream Wells" and that Cholla's acts to tie wells into that upstream pipeline were an unreasonable interference with Kadane's rights. Kadane argues that *Mid-Texas Petroleum Co. v. Colcord* controls because that court held that Mid-Texas was entitled to exclusive and full use of the "north 20 acres" and "south 20 acres" along the Clear Fork of the Brazos River for its oil and gas development. *Mid-Tex. Petroleum Co. v. Colcord*, 235 S.W. 710, 715 (Tex. Civ. App.—Fort Worth 1921, no writ). Kadane asserts that, like Mid-Texas, it should be allowed to continue to exclusively use the entire upstream pipeline "as a compressor inlet line." We disagree. In *Mid-Texas*, the court held that Mid-Texas was entitled to the south twenty acres for oil and gas development because of the original lease grant and the lease it held with Seaboard Oil, who could not execute a surface use lease with a third party that contravened its lease with Mid-Texas. *Mid-Tex.*, 235 S.W. at 715. But in this case, the issue is whether Kadane can compel Enbridge to maintain the upstream pipeline "as a compressor inlet line" for Kadane's sole benefit and force Cholla to tie its wells into the downstream pipeline.

The only existing use Kadane alleges is of the surface of the land over the length of Enbridge's pipeline. Kadane used the surface when it installed the 1,500 feet of pipeline as required by the line use agreement. *See Cole v. Anadarko Petroleum Corp.*, 331 S.W.3d 30, 37 (Tex. App.—Eastland 2010, pet. denied) (explaining that a mineral lessee uses the surface during installation and that, once installed, the use becomes a pipeline easement); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 626 (Tex. 2002) ("Like the Koch [Pipeline Company] easement, the Exxon easement does not affect the [surface owner's] continued use of the surface for farming cotton."). While Kadane argues that losing its wells "as a result of Cholla's entry under the auspices of the SUA as a matter of law constitutes an unreasonable interference with Kadane's rights as contemplated under the terms of

9

the SUA," the question is whether Cholla interfered with an "existing use" of the surface.

Cholla argues that, while a mineral lessee "has dominant rights precluding interference with its existing uses," the obligations of "due regard" and the duty to "accommodate" prevent Kadane "from claiming that it is using all lands along a gas purchaser's pipeline and that, as a result, no other oil and gas operator can connect its wells to such pipeline without interfering." We agree. The summary judgment evidence is undisputed that Enbridge gave Kadane the right to use its pipeline as a compressor inlet line, but Enbridge reserved the right to terminate Kadane's exclusive use by providing notice of its intent "to use [the] line for another service" or to terminate the agreement by giving thirty days' written notice. The evidence was undisputed that terminating the line use agreement did not prevent Kadane from marketing or selling the oil and gas it produced but, rather. terminated Kadane's exclusive use of the upstream pipeline. Furthermore, Cholla's wells connected to the upstream pipeline at a separate location from Kadane's connection. Therefore, the summary judgment evidence established and supported as a matter of law the trial court's judgment that Cholla did not unreasonably interfere with an existing use of the surface by any surface or mineral lessees. Kadane's second issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.

JIM R. WRIGHT
CHIEF JUSTICE

June 27, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.